H. E. SWEZEY & SON MOTOR TRANSPORTATION, INC., Plaintiff, *v.* REICH BROS. LONG-ISLAND MOTOR FREIGHT, INC., Defendant.

Supreme Court, Special Term, Suffolk County, July 23, 1946.

*Solomon Raffe* for plaintiff.

*Arthur R. Reich* for defendant.

Cuff, J. Plaintiff and defendant, New York corporations, since prior to April 13, 1938, and until the commencement of this action, were continuously engaged, operating under both State and Federal licenses, in the interstate and intrastate business of transporting by motor vehicle property for hire, viz., agricultural products, supplies and general merchandise. On April 13, 1938, they formed a third corporation — Long Island Motor Freight Agency, Inc. — composed exclusively of stockholders of plaintiff and defendant. On the same day, plaintiff and defendant entered into a written agreement with the new corporation and a separate written agreement between themselves which agreements in substance provided: Whenever an order under 10,000 lbs. was received by plaintiff or defendant, it was diverted without the shipper's knowledge to the Long Island Motor Freight Agency, Inc., which made the " pick-up " and, depending upon its destination, passed the shipment over to either plaintiff or defendant, to have the delivery made. Long Island east of Queens County was divided by the contracts into two parts, plaintiff making deliveries in one area and defendant in the other. The tariffs received were apportioned 70% to the company which actually made the delivery and 30% to Long Island Motor Freight Agency, Inc. (Resulting profit to the latter ultimately went to plaintiff and defendant because their stockholders owned it.) The three corporations functioned under the terms of those two contracts from April 13, 1938, until about early 1945, when defendant terminated the arrangement.

Plaintiff has instituted this action for damages for breach of contract. In its amended answer, defendant raises the defense of illegality, alleging that the contracts sued upon violated the State and Federal laws which prohibit forms of monopoly.

A motion by plaintiff to strike out those defenses brings the question of the validity of the contracts referred to before this court.

Before resorting to the law, it might be well to consider the objectives of the contracts under attack. Plaintiff and defend-

ant prior to the contracts were separately engaged in the transportation freight or express business. Whether they were in competition before the contracts is not within this court's knowledge. After the contracts and by virtue thereof they were not. If these contracts were not intended to remove competition between plaintiff and defendant, that was nevertheless their effect. Plainly the overhead of plaintiff and defendant was to be reduced by the devised system, a part of which was the " pooling " of plaintiff's and defendant's equipment and employees. That reduction placed at a disadvantage others engaged in competition with plaintiff and defendant. The goal of these contracts was to provide a greater profit for plaintiff and defendant and to give both of them an advantage over competitors.

Is that kind of eliminating of competition and " pooling " permitted by the law of the land?

As early as July 2, 1890, Congress spoke and declared illegal the making of contracts which were in restraint of interstate trade (U. S. Code, tit. 15, § 1 et seq., called the Sherman Antitrust Law). In 1920, as to railroads, and in 1940, as to motor vehicles used as common carriers, Congress relaxed its absolute legislative ban on contracts which restrained trade and permitted " any common carrier " to obtain permission from the United States Interstate Commerce Commission " for the pooling or division of traffic, or of service, or of gross or net earnings * * * " under specified guarded conditions but always " in the interest of better service to the public or of economy in operation, and (which) will not unduly restrain competition * * *." (Interstate Commerce Act, Part I, § 5, subd. [1]; U. S. Code, tit. 49, § 5, subd. [1].)

The above reference to permission is cited to emphasize the attitude of Congress as being opposed to " pooling ", division " of traffic ", " of service " or " of earnings ". Although plaintiff and defendant indulged in each of those forbidden practices, neither ever obtained the permission provided and would seem at all times to have been operating in violation of Federal law.

Two enactments in New York State treat with the subject under discussion. Section 23 of the Stock Corporation Law (originally § 14, enacted by L. 1890, ch. 564, § 7, as amd.) prohibits combining of corporations " for the prevention of competition in any necessary of life ", while section 340 of the General Business Law (derived from L. 1899, ch. 690, § 1) provides that contracts by which " Competition * * *

in the  *  *  *  transportation '' business '' is or may be restricted  *  *  *  is  *  *  *  declared to be against public policy, illegal and void.''

Once again there is a clear legislative mandate directed against the practices of plaintiff and defendant under their contracts.

The plaintiff's argument that a Federal statute may not be invoked to establish invalidity of a contract, the breach of which is the basis of a suit at law in a State court, must be overruled. The cases cited in support of that contention are not in point. Both the Federal and State statutes apply to the situation here presented. Plaintiff's motion to strike the defenses which plead illegality of contract is denied.